1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6
7

HARRIET GENEVIEVE ANYASULU, et al.,

Case No. 24-cv-03114-JSW

8

Plaintiffs,

**ORDER DENYING MOTION TO COMPEL ARBITRATION OR TO DISMISS ACTION; SETTING CASE MANAGEMENT CONFERENCE**

9

v.

10

TEMPUR SEALY INTERNATIONAL, INC., et al.,

Re: Dkt. No. 15

11
12

Defendants.

13           Now before the Court is the Motion to Compel Arbitration, or, in the Alternative, to

14   Dismiss the Complaint ("Motion") filed by Defendants Tempur Sealy International, Inc., Sealy

15   Ecommerce, LLC, Tempur-Pedic North America, LLC, Sealy Technology LLC, and The Stearns

16   & Foster Bedding Company (collectively, "Tempur Sealy"). The Court has considered the

17   parties' papers, relevant legal authority, and the record in this case, and it finds the Motion suitable

18   for resolution without oral argument. *See* N.D. Civ. L.R. 7-1(b). For the following reasons, the

19   Court DENIES the Motion.

20                                    **BACKGROUND**

21   **A.      Allegations in the Complaint.**

22           Plaintiffs Harriet Genevieve Anyasulu and Alina Zhuravel (together, "Plaintiffs") allege

23   they were deceived by faux sale prices into purchasing mattresses that they would not have

24   otherwise purchased. (Dkt. No. 1-1, Complaint ("Compl."), ¶¶ 13-17.)

25           Plaintiffs contend that Tempur Sealy's website misleads customers by prominently

26   displaying "35% off" sales with countdown timers at the top of the page. (*Id.* ¶ 19.) However, the

27   timers reset to four days at the end of the countdown, again indicating that the new sale will end in

28   four days. (*Id.* ¶ 46.) Accordingly, Tempur Sealy never sells mattresses or other products at what

United States District Court
Northern District of California

they represent to be the "regular price."  (*Id.* ¶ 19.)  Plaintiffs claim that the advertisements create

a false sense of urgency for consumers, who believe they must "act fast in order to get the deal."

(*Id.* ¶ 53.)

Plaintiffs allege that Tempur Sealy's advertising practices violate California's Consumers

Legal Remedies Act and Unfair Competition Law.  (*Id.* ¶¶ 82-112.)  Plaintiffs seek to represent a

class of persons who, while in California, purchased one of Tempur Sealy's products advertised at

a discount on the website within four years of the Complaint.  (*Id.* ¶ 70.)

**B.     The Arbitration Agreement.**

Since September 19, 2020, the bottom of all pages of Tempur Sealy's website has featured

a black banner with hyperlinks in white font and all caps, in the following order: "OUR STORY /

SUPPORT / CONTACT US / CALIFORNIA CONSUMER PRIVACY NOTICE / OPT-OUT OF

MARKETING / CONSUMER RIGHTS REQUEST / WARRANTY / FINANCING / TERMS OF

USE / PRIVACY POLICY / ABOUT ADS / ACCESSIBILITY STATEMENT."  (Dkt. No. 15,

Motion, at 7; Dkt. No. 16, Declaration of Dan Wagner ("Wagner Decl."), ¶ 3.)  The hyperlinks are

not underlined, and the font size is very small.  (*Id.*)

The banner is not frozen at the bottom of the screen.  From the home page, finding the

banner requires the user to scroll through several advertisements.  When printed in small font, the

banner appears only at the bottom of the fifth page.  (Dkt. No. 20, Declaration of Brandon

Brouillette ("Brouillette Decl."), Ex. A.)  From the checkout screen, the banner is separated by

several inches and two paragraphs of text from the bright yellow "PLACE ORDER" button.  (*Id.*,

Ex. B.)  The two paragraphs of text are fine print relating to the "Cocoon by Sealy credit card,"

and they make no reference to the Terms.  (*Id.*)  It is possible to navigate through the website and

place an order without scrolling to the banner.

The "TERMS OF USE" hyperlink takes one to the active Terms of Use (the "Terms")

governing the "Service."  (Wagner Decl., Ex. A.)  In the version effective January 1, 2024,

"Service" is defined as "our websites and any online services or software provided by Tempur

Sealy International, Inc., Sealy Ecommerce International, and/or Tempur-Pedic North America,

LLC (collectively, 'Company', 'we', or 'us' or 'our')."  (*Id.*)  In the second paragraph of the

United States District Court
Northern District of California

Terms, Tempur Sealy cautions:

> These Terms affect your legal rights, responsibilities and obligations and govern your use of the Service, are legally binding, limit Company's liability to you and require you to indemnify us and to settle certain disputes through individual arbitration. **If you do not wish to be bound by these Terms and any Additional Terms, do not use the Service and uninstall Service downloads and applications.**

(*Id.* at 2 (emphasis in original).)  On the next page, Tempur Sealy provides an "Overview of Terms." (*Id.* at 3.)  Among the summarized terms is the following notice: "As permitted by law, you agree to arbitrate disputes and waive jury trial and class actions." (*Id.*)  The remaining dispute resolution terms are found in Section Nine, and they include a one-sided pre-arbitration notification requirement, an arbitration requirement, class action waiver, jury waiver, waiver of injunctive relief, and forum selection clause. (*Id.* at 17-19.)

Section Nine covers "any controversy, allegation, or claim arising out of or relating to the Service, the Content, your UGC, these Terms, or any applicable Additional Terms, (collectively, 'Dispute')." (*Id.* at 17.)  The Terms define "Dispute" as "any controversy, allegation, or claim arising out of or relating to the Service, the Content, your UGC, these Terms, or any applicable Additional Terms." (*Id.*)  "Content" is not clearly defined.  "UGC" means "User-Generated Content." (*Id.* at 6.)  "Additional Terms" means "additional or different terms, posted on the Service, [which] apply to your use of certain parts of the Service." (*Id.* at 2.)  It is unclear where one must look to identify any Additional Terms.

Users may opt out of the arbitration agreement by sending notice to Tempur Sealy's legal department via mail within five business days of first use of the Service. (*Id.* at 17.)

### THE COURT DENIES TEMPUR SEALY'S MOTION TO COMPEL

Tempur Sealy argues that Plaintiffs agreed to the Terms, and so Plaintiffs' claims must be resolved via arbitration.  Tempur Sealy alternatively argues that Plaintiffs' claims fail to meet Rule 9(b)'s heightened pleading standard for claims sounding in fraud.  Plaintiffs oppose.

**A.    Legal Standards Applicable to a Motion to Compel Arbitration.**

The Federal Arbitration Act ("FAA") provides that written arbitration provisions in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

United States District Court
Northern District of California

1   equity for the revocation of any contract[.]"  9 U.S.C. § 2.  "If a court is 'satisfied that the making

2   of an agreement for arbitration is not in issue,' it must send the dispute to an arbitrator."

3   *Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192 (2024) (quoting 9 U.S.C. § 4).  A court may order

4   arbitration only as to those disputes that the parties have agreed to arbitrate.  *Id.*

5          State law determines whether an agreement exists.  *Oberstein v. Live Nation Ent., Inc.*,

6   60 F.4th 505, 510 (9th Cir. 2023).  Both parties agree that California law applies.  In California,

7   parties to a contract must have actual or constructive notice of the agreement and manifest their

8   assent.  *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022).

9          In the online world, some websites choose to provide "clickwrap agreements" to offer

10  contractual terms to those who use the sites.  *Id.* at 856.  In a typical clickwrap agreement, a user

11  manifests assent to the terms of use by checking a box which states "I agree."  *Id.* at 856.  These

12  agreements are typically enforceable, because the user has notice and has taken an action

13  demonstrating assent.  *Id.*

14         Other websites choose to offer contractual terms through "browsewrap agreements."  *Id.*

15  On websites with browsewrap agreements, the contract terms may be found through a hyperlink,

16  and the user manifests assent to those terms by using the website.  *Id.*  Because no engagement

17  with the terms is necessary, a website operator must show that the user either had actual

18  knowledge of the terms or that the user was on inquiry notice.  *Id.*  "[A]n enforceable contract will

19  be found based on an inquiry notice theory only if: (1) the website provides reasonably

20  conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes

21  some action, such as clicking a button or checking a box, that unambiguously manifests his or her

22  assent to those terms."  *Id.*

23  **B.     The Arbitration Agreement Is Not Enforceable Against Plaintiffs.**

24         **1.     Tempur Sealy Has Not Shown Actual Notice.**

25         For a contract to be formed via browsewrap, there must be inquiry notice "[u]nless the

26  website operator can show that a consumer has actual knowledge of the agreement."  *Berman*, 30

27  F.4th at 856.

28         Tempur Sealy offers no proof that the Plaintiffs saw the "TERMS OF USE" hyperlink on

its website.  Both Plaintiffs disclaim recollection of the hyperlink.  Accordingly, for the arbitration agreement to apply, Plaintiffs needed to be on inquiry notice of the Terms.

### 2.    Plaintiffs Were Not on Inquiry Notice of the Terms.

Tempur Sealy's website does not provide reasonably conspicuous notice of the Terms, and Plaintiffs did not manifest their assent.

#### a.    The Website Design Hides the Terms of Use Hyperlink.

The website screen prints included in Tempur Sealy's motion and in Exhibits A and B to the Brouillette Declaration do not reflect reasonably conspicuous notice of the Terms.  *See Berman*, 30 F.4th at 857 (noting website operators have an obligation to put users on notice of browsewrap terms via design choices).

The only conspicuous design choice for the "TERMS OF USE" link is the use of capital letters.  Every other choice minimizes the hyperlink:  The font size is tiny.  The format of white text on a black background does not draw the eye.  One must scroll for some time past colorful images and statements in larger fonts to find the banner.  Once the user sees the banner, they must pick out the "TERMS OF USE" from among the other links, recognize them as hyperlinks despite their white color and lack of underline, and click to find the Terms.

Even the fine print on the checkout page, below the "PLACE ORDER" button, is in a larger font than the links in the banner, albeit small and compressed.  (*See* Brouillette Decl., Ex. B.)  If a prudent purchaser takes the time to read that fine print before finalizing her order, she will nevertheless fail to find reference to the Terms.  (*See id.*)

Tempur Sealy helpfully highlights the hyperlink to the Terms in its Motion.  (Mot. at 7, Image.)  Tempur Sealy's apparent belief that the Court would be unable to locate the Terms without some extra emphasis further demonstrates just how inconspicuous the Terms hyperlink is.  If Tempur Sealy expects the Court—which is specifically tasked with locating and evaluating the presentation of the link—to struggle to find the Terms, then it cannot expect a reasonable consumer—presumably visiting the site with the object of purchasing a mattress—to have notice.

#### b.    Plaintiffs Did Not Manifest Assent to the Terms.

Tempur Sealy contends that Plaintiffs manifested assent to the Terms by "using and

placing their orders on the [w]ebsite." (Dkt. No. 22, Reply, 3:24-25.)  In the absence of notice, however, using and placing orders through the website cannot constitute assent.  *See Berman*, 30 F.4th at 857 ("A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement.").

In *Berman*, a notice and hyperlink appeared directly above a "continue" button along with the text "I understand and agree to the Terms & Conditions." *Id.* at 858.  The Ninth Circuit held that the statement was insufficient to "explicitly notify a user of the legal significance of the action." *Id.*  The webpage could have bound the users if it had made a simple change to "By clicking the Continue >> button, you agree to the Terms & Conditions." *Id.*

Plaintiffs here had much less notice that completing a purchase or merely using the website would signify consent.  The "TERMS OF USE" link was not directly next to any button which Plaintiffs needed to click, nor was it underlined to signify the presence of a hyperlink.  As in *Berman*, the solution was readily available: Tempur Sealy could have provided notice by drawing Plaintiffs' attention to the Terms on the homepage and/or by including language above or below the "PLACE ORDER" button to signify that clicking the button would bind Plaintiffs to the contents.  Instead, Tempur Sealy made the path to the Terms as inconspicuous as possible, and it never alerted Plaintiffs that by using the website they agreed to arbitrate their claims.

Accordingly, the parties never formed an agreement to arbitrate.  The Motion to Compel is denied.

**THE COURT DENIES TEMPUR SEALY'S MOTION TO DISMISS**

**A.      Legal Standards Applicable to a Motion to Dismiss.**

A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  Fed. R. Civ. P. 8(a)(2).  "[D]etailed factual allegations are not required" to survive a motion to dismiss if the complaint contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Labels and conclusions[] and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

United States District Court
Northern District of California

1   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

2   draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556

3   U.S. at 678.

4   Claims sounding in fraud or mistake are subject to heightened pleading requirements.

5   Federal Rule of Civil Procedure 9(b) requires plaintiffs to "state with particularity the

6   circumstances regarding fraud or mistake." Fed. R. Civ. Proc. 9(b). Thus, "[a]verments of fraud

7   must be accompanied by 'the who, what, when, where, and how' of the misconduct charged."

8   *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003) (quoting *Cooper v. Pickett*,

9   137 F.3d 616, 627 (9th Cir. 1997)).

10   When a party moves to dismiss for failure to state a claim under Rule 12(b)(6), a District

11   Court generally accepts as true all well-pleaded material facts and draws all reasonable inferences

12   in favor of the plaintiff. Faulkner v. ADT Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013).

13   **B.      The Court Denies the Parties' Requests for Judicial Notice.**

14   District courts may consider materials outside the pleadings without converting a motion

15   under Rule 12(b)(6) to a motion for summary judgment under Rule 12(d) when the materials are

16   incorporated by reference or subject to judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899

17   F.3d 988, 998 (9th Cir. 2018).

18   Here, both sides ask the Court to take notice of Tempur Sealy's website and screen

19   captures thereof. Because the Court may resolve the Motion based upon the website excerpts

20   included in the Complaint, it denies the requests.

21   **C.      Plaintiffs Plead Fraud with Particularity.**

22   Tempur Sealy argues that Plaintiffs fail to plead fraud with particularity. The Court

23   disagrees, and it finds that Plaintiffs plausibly allege the "who, what, where, when, and how" of

24   the supposed misrepresentations.

25   First, "the who." Plaintiffs identify Tempur Sealy, themselves, and the putative class.

26   Second, "the what, when, and where." The Complaint alleges that Anyasulu bought the

27   Queen-size Cocoon Chill Soft/The Chill Mattress on May 20, 2021, from Alameda, California, via

28   Tempur Sealy's website. (Compl., ¶¶ 13-14, 65.) Anyasulu purchased the mattress for $699, but

she believed that the mattress usually sold for $1,080, because of the advertised sale and prominent countdown timer. (*Id.* ¶ 14.) Zhuravel bought a Full-size Cocoon Extra Chill Memory Foam/The Chill Mattress on November 23, 2023, from Los Angeles, California, via Tempur Sealy's website. (*Id.* ¶¶ 15-16, 67.) Zhuravel paid a purchase price of $603, which she believed was discounted from $969 due to a sale and prominent countdown timer. (*Id.* ¶ 16.)

Tempur Sealy contends that "Plaintiffs provide essentially no facts about their particular experience" with the challenged promotions, in part because they do not specify the limited-time promotion active at the time of the purchases. (Mot., at 10:14-17.) Yet, Plaintiffs provide the advertised "regular" price for their mattresses, the advertised "sale" price, and state that they believed "the sale would end soon as a result of [the website's] prominent countdown timer." (Compl., ¶¶ 14, 16.) These are the alleged misrepresentations at issue.

Tempur Sealy further argues that Plaintiffs have no basis for their "information and belief" that the sales are in fact not time-limited. Yet Plaintiffs provide screen captures showing identical discounts and a constant countdown timer on dates spanning seven months. (*Id.* ¶ 50 (showing website as of March 30, 2024); *id.* ¶ 22 (showing website as of December 16, 2023); *id.* ¶ 21 (showing website as of September 7, 2023).) Plaintiffs also provide screen captures showing that the timer "reset" in March 2024, the purported sale stayed the same, and the description of the sale changed from "Flash Sale!" to "Weekend Savings Event!" (*Id.* ¶ 50.) These allegations are sufficient to support Plaintiffs' information and belief.

Finally, "the how." Plaintiffs allege they would not have purchased the mattresses had they known they were not receiving a sale price. (*Id.* ¶ 69.) Tempur Sealy takes umbrage with Plaintiffs' contention that they were damaged by the alleged false sales because Plaintiffs do not provide information regarding the "prevailing" prices for the mattresses, "or how they were different from the price [Plaintiffs] paid." (Mot., at 12:23-24.) This argument disregards the allegations on the face of the Complaint. The alleged "regular" prices are clearly stated: $1,080 for Anyasulu's mattress and $969 for Zhuravel's mattress. (Compl., ¶¶ 14, 16.) Plaintiffs have pleaded what is required. *See Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1105 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (holding plaintiff alleged economic

8

1   injury where he pleaded he would not have purchased product at false discount).

2   **D.      Plaintiffs Plead Sufficient Facts to Show a Reasonable Consumer Could Be Misled.**

3   The CLRA and UCL each require plaintiffs to show that a "reasonable consumer" could be

4   deceived or misled by the business practice.  *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093,

5   1097 (9th Cir. 2023).  Plaintiffs must allege more than a "mere possibility" that some consumers

6   might misunderstand the advertisement.  *Id.*  "The touchstone under the 'reasonable consumer'

7   test is whether the product labeling and ads promoting the products have a meaningful capacity to

8   deceive consumers." *Id.*

9   Whether a business practice would deceive or mislead a reasonable consumer is typically a

10   question of fact not appropriate for resolution on a motion to dismiss.  *Whiteside v. Kimberly*

11   *Clark Corp.*, 108 F.4th 771, 778 (9th Cir. 2024).  A motion to dismiss for failure to meet the

12   reasonable consumer standard may be granted if the "advertisement itself makes it impossible for

13   the plaintiff to prove that a reasonable consumer is likely to be deceived."  *Id.* (quoting *Williams v.*

14   *Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)) (internal marks removed).  Therefore, the

15   Court may grant Tempur Sealy's motion to dismiss for failure to meet the "reasonable consumer"

16   standard only if it determines that Plaintiffs cannot possibly show a reasonable consumer would be

17   deceived by the challenged sales practices.  Plaintiffs clear this low bar.

18   Tempur Sealy offers a number of unpublished cases for the proposition that the reasonable

19   consumer will not consider strikethrough prices to mean an "original" price, but will instead be

20   aware that the price could mean a comparison to retail prices offered by different merchants.

21   Those cases do not aid Tempur Sealy, because the labels at issue included "compare to" language.

22   *See Rubenstein v. Neiman Marcus Group*, No. CV 14-017155 SJO (JPRx), 2015 WL 1841254

23   (C.D. Cal. Mar. 2, 2015) (holding "compare to" on price tag did not reference a former price);

24   *Sperling v. DSW Inc.*, No. EDCV151366JGBSPX, 2016 WL 354319, at *7 (C.D. Cal. Jan. 28,

25   2016) (same, with "compare at" language).  Even with the "compare to" modifier, the Ninth

26   Circuit reversed *Rubenstein* because the allegations "that neither Neiman Marcus nor other

27   merchants in the vicinity sold comparable products at the Compared To prices at the time of her

28   purchase[ were] sufficient to state a claim under the UCL."  *Rubenstein v. Neiman Marcus Grp.*

9

*LLC*, 687 F. App'x 564, 567 (9th Cir. 2017).

Here, the website does not state "compare at" or "compare to" before the marked-down prices.  Instead, it presents a bolded price directly next to a strikethrough price, presented in conjunction with an advertised "35% off sale."  (*E.g.*, Compl., ¶ 11.)  Plaintiffs plausibly allege that a reasonable consumer would assume that the bolded price represents the strikethrough price, less 35 percent for the time-limited sale. *See Phillips v. Brooklyn Bedding LLC*, No. 23-CV-03781-RFL, 2024 WL 2830663, at *3 (N.D. Cal. Mar. 28, 2024) (denying motion to dismiss CLRA claim because reasonable consumer could believe strikethrough prices indicate discount from regular price).

In sum, Plaintiffs have alleged that Tempur Sealy's website deceives or misleads reasonable consumers into purchases that the consumers would otherwise not make by falsely advertising time-limited sales.

## CONCLUSION

For the foregoing reasons, Tempur Sealy's Motion is DENIED.  Defendants shall file an answer within 21 days after the date of this Order.

The Court HEREBY SETS a Case Management Conference for Friday, October 25, 2024, at 11:00 a.m.  The parties shall submit a joint case management statement by October 18, 2024.

**IT IS SO ORDERED.**

Dated: August 15, 2024

_____
JEFFREY S. WHITE
United States District Judge